UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANET S. LEIWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:06 CV 196 DDN |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of Janet S. Leiwe for a period of disability, disability insurance benefits, and supplemental security income benefits under the Social Security Act, 42 U.S.C. § 401, et seq. The court has jurisdiction over the subject matter of this action under 42 U.S.C. §§ 405(g) (Title II) and 1381(c)(3) (Title XVI). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

On or around March 1, 2004, plaintiff Janet S. Leiwe applied for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 et seq., and for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq., both based upon disability. She alleged she became disabled, beginning on July 13, 2002,[2] at age 60, on

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted as defendant in this action. 42 U.S.C. § 405(g).

[2] See Tr. 51. In her disability report, plaintiff stated her condition first bothered her on July 15, 2002, and that she became unable to work on December 4, 2003. (Tr. 62.)

account of asthma and congestive obstructive pulmonary disease (COPD). She alleged that these impairments leave her short of breath and wheezing. (Tr. 51, 62.) Following a hearing, an administrative law judge (ALJ) determined that plaintiff was not disabled. (Tr. 15-22.) The Appeals Council found no reason to review the ALJ's decision and it became the final decision of the Commissioner for review in this action.

<u>General legal principles</u>

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); <u>Pelkey v. Barnhart</u>, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." <u>Id.</u> In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's (ALJ's) decision. <u>See</u> <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it merely because there is substantial evidence that indicates a contrary outcome or because the court would have decided the case differently. <u>See</u> <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, plaintiff must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. <u>See</u> 42 U.S.C. § 423(a)(1)(D), (d)(1)(A). A five-step regulatory framework governs the evaluation of disability in general. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. <u>Fastner v. Barnhart</u>, 324 F.3d 981, 983-84 (8th Cir. 2003). If the ALJ finds that a claimant is or is not disabled at any step, the indicated decision is made and the next step is not reached. 20

C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step One asks whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Step Two asks whether she has a "severe impairment," i.e., an impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Step Three asks whether the impairment is equal to an impairment listed by the Commissioner as precluding substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). Step Four asks whether the impairment prevents the claimant from doing work she has performed in the past. 20 C.F.R. §§ 404.1520(e), 416.920(e). If she cannot perform her past relevant work, at Step Five, the Commissioner has the burden of establishing that she can perform work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005). If she can perform such work, she is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ's findings

In his written opinion, the ALJ found that plaintiff was not disabled, because she could perform her past relevant work as a certified nursing assistant as it is customarily performed in the national economy, as testified by a vocational expert. (Tr. 22.) In reaching that decision, the ALJ found that plaintiff had not performed substantial gainful activity since January 30, 2003. She suffers from obesity, asthma, chronic obstructive pulmonary disease, and hypertension which is controlled by medication. None of her impairments or combination of them meets or equals any that are on the Commissioner's List of disabling impairments. Of great importance, the ALJ found that plaintiff had the residual functional capacity (RFC)

> to perform the physical exertional and nonexertional

requirements of work except for lifting or carrying more than 25 pounds frequently or more than 50 pounds occasionally; climbing; doing more than occasional stooping, kneeling, crouching, or crawling; working at unprotected heights or around dangerous moving machinery; or having concentrated or excessive exposure to dust, fumes, chemicals, temperature extremes, high humidity or dampness, and other typical allergies, pollutants, and atmospheric irritants (20 CFR 404.1545 and 416.945).

(Tr. 22.)

## Plaintiff's allegations

Plaintiff argues generally that the ALJ's decision is not supported by substantial evidence. More specifically she argues that the ALJ's RFC finding is not supported by the record, that the ALJ improperly discredited certain opinions of treating physician Dr. Robert Wudel without seeking his clarification, and apparently failed to consider the report of Dr. Steven Smith to whom the ALJ sent plaintiff following the hearing.

In support of her applications for benefits, plaintiff reported to the Social Security Administration that she was employed full-time as a Certified Nurse's Assistant (CNA) in a nursing home in Missouri between June 1990 and December 1998. She left that employer for a better paying job. (Tr. 73.) She was similarly employed in Alabama from October 29, 2002 to January 30, 2003, but was fired due to absenteeism because she was sick. She alleged she was having trouble breathing. (Tr. 72.)

On the form provided, plaintiff described work as a CNA as requiring lifting, kneeling, walking, taking care of residents in a nursing home, daily care of the residents and putting them into bed. The job required the use of equipment, technical knowledge, and the preparation of charts. Each day she was required to walk, stand, stoop, kneel, and crouch for seven and one-half hours; to reach and use large and small objects for four hours; and to sit for one-half hour. When asked to check the heaviest weight she

lifted, she checked the box for 100 pounds or more. When asked to indicate the weight she frequently lifted, she wrote 120 pounds to 195 pounds. (Tr. 63.)

### Administrative record

The record reflects that plaintiff's upper respiratory condition sent her to an emergency room in Alabama in September 2002. She was treated by Dr. Larry Skelton for 15 months until she again visited the medical center on December 7, 2003; at that time she was wheezing, short of breath, and unable to speak full sentences. (Tr. 143.) After that, plaintiff gave up smoking and continued to see Dr. Skelton who prescribed some 13 medications. (Tr. 122.)

In January 2004, after moving to Missouri, plaintiff began seeing Dr. Robert Wudel who prescribed Calan, Albuterol, Lozol, and Advair. In March 2004 she complained of a burning sensation in her chest and white phlegm; in August 2004 plaintiff had decreased breath sounds and extremity swelling. Dr. Wudel prescribed Lasix. (Tr. 158.) In April 2005 a mammogram indicated areas of concern, but no specific diagnosis was made. (Tr. 162.)

On May 26, 2005, Dr. Wudel completed a Physical Medical Source Statement regarding plaintiff. He diagnosed COPD, hypertension, and bilateral masses in her breast. He determined that, during an 8-hour workday, plaintiff has unlimited ability to sit; she could stand and walk for 15 minutes; she could occasionally lift or carry five pounds, but never ten or more pounds; she had no limitation to using small objects with her hands; she had no vision limitation; and she had no limitation in her ability to balance, hear, and communicate. Dr. Wudel found that plaintiff could occasionally reach above her head and stoop; she could never tolerate odors or dust; and could only occasionally tolerate exposure to noise. She had no medical impairment that would be expected to produce pain. She did not need a cane or other assistive device, she would need

to lie down or nap during an 8-hour workday, and her limitations either have lasted 12 months or can be expected to last 12 continuous months. (Tr. 152-55.)

### Hearing before ALJ

At the June 15, 2005 hearing before the ALJ, plaintiff testified and described her condition. She was fired from her last certified nursing assistant position because of absenteeism, because she could not lift or breathe. (Tr. 189.) At the time of the hearing she was doing piece-work packaging in her home on an as-needed basis. (Tr. 188, 209-10.) She uses an Albuterol inhaler and a nebulizer machine at home. (Tr. 190.) She has limited ability to lift, but can probably lift a gallon of milk with each hand. (Tr. 203-04.)

Vocational Expert (VE) Barbara Myers testified that plaintiff's prior work as a CNA was "medium and semiskilled." (Tr. 216.) However, as performed in the national economy, CNA work required exertion at the heavy level; as defined by the Dictionary of Occupational Titles, the work requires medium exertion. (Tr. 216-17.) She testified that plaintiff's work at home was unskilled and required light exertion. (Tr. 217.) The ALJ asked the VE a hypothetical question, based upon plaintiff's age, education, and work experience, and based upon the hypothetical individual's ability to lift no more than 50 pounds occasionally and 25 pounds frequently, and to stand or walk for six hours in an eight hour work day.[3] The question was also based upon the hypothetical

---

[3]In formulating these hypothetical characteristics, the ALJ described them as being made up "out of whole cloth" by him, apparently because there was no "government" RFC evaluation, only that supplied by Dr. Wudel. (Tr. 217.) By the ALJ's comment, plaintiff ascribes to the ALJ no substantial evidentiary basis for the hypothetical characteristics. In his written opinion, the ALJ gainsaid this argument by stating he actually presaged the report of Dr. Steven Smith, discussed below. (Tr. 19 n.2.)

person not being exposed to concentrations of fumes, dust, odors, and gases; not having any restriction on sitting; not being required to climb ladders, ropes, and scaffolds; and not being required to work near dangerous, unprotected heights and around dangerous, unprotected machinery. (Tr. 217-18.)

In her answer to this hypothetical question, the VE stated that the hypothetical person would be able to perform plaintiff's past relevant work as a hand packager, nursing aid, and assembler. However, the home-venue assembly work plaintiff performed did not exist in substantial numbers in the national economy. (Tr. 219.)

The ALJ then had the VE consider the same hypothetical characteristics, except that the subject could lift no more than 20 pounds and 10 pounds occasionally. The VE testified these restrictions would eliminate the assembly job. (Tr. 219-20.)

Then the ALJ asked the VE to consider plaintiff's abilities as they were described by Dr. Wudel in his written medical source statement form. The VE answered that this hypothetical person could perform no work in the national economy. She explained that all jobs were ruled out by the combination of the limitations to lifting no more than five pounds, and standing and walking no more than 30 minutes. (Tr. 221.)

Following the hearing, as he said he might, the ALJ ordered a consultative examination of plaintiff. This was accomplished on August 9, 2005, by Dr. Steven Smith. In his written report of his personal examination of plaintiff,[4] Dr. Smith described plaintiff's history as including COPD, asthma, occasional dyspnea with

---

[4]In his brief before this court, plaintiff's counsel describes this examination as lasting 15 minutes and not including any medical or diagnostic testing. (Doc. 14 at 7.) This assertion is not contested by defendant. However, while a one-time consulting examination may not be substantial evidence on its own, it may be considered as one of the relevant factors in the ALJ's determination. Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004).

exertion, no cough or wheeze, no asthma attacks, and no use of oxygen. Her medical history included hypertension, diverticulosis, a ruptured ovarian cyst, a 1984 motor vehicle accident with a left spinal injury, and four medications. The findings of his physical examination did not note any abnormality. An examination of her chest indicated that her breath sounds were all clear, she had no tenderness, and her heart sounds were normal. Plaintiff's arms had normal muscle tone with no tenderness. There was no joint swelling. Her shoulders had full range of motion without pain. Her legs had normal muscle tone and range of motion. Plaintiff had no swelling in her legs and normal joint motion. Her hands were not tender. She had 5 out of 5 grip strength and normal dexterity in each hand. Plaintiff's back was normal and without tenderness. Her reflexes were normal. He concluded that plaintiff suffered from mild and minimally symptomatic COPD, mild hypertension that was controlled by therapy, untreated seasonal allergies, obesity that causes some of plaintiff's symptoms, and an old left lumbar injury with mild symptoms. He concluded that "She may resume her previous occupation [previously stated in the report as "CNA"] or work at most jobs, after losing weight. Besides her weight, he found that plaintiff was limited by her seasonal allergies for which she was not being treated. (Tr. 164-66.)

### Consideration of treating physician

Plaintiff argues that the ALJ improperly discredited the RFC opinion of treating physician Robert Wudel, M.D., set forth in his written May 26, 2005 Physical Medical Source Statement, and rejected the post-hearing examination results of Dr. Smith, leaving the ALJ's RFC findings without a substantial evidentiary basis.

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and

continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.' . . . RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. §§ 404.1545(a), 416.945(a). When determining plaintiff's RFC, the ALJ must consider all of the relevant evidence but ultimately the determination of the plaintiff's RFC is a medical question. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). As such, the determination of plaintiff's ability to function in the workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

The Commissioner's regulations require that a treating physician's opinions generally should be given substantial weight. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).

> If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the opinion should be given controlling weight. Id. However, "statements that a claimant could not be gainfully employed 'are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner].'" Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996) (quoting Nelson v. Sullivan, 946 F.2d 1314, 1316 (8th Cir. 1991)). A treating physician's opinions must be considered along with the evidence as a whole, and when a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.

Krogmeier, 294 F.3d at 1023. See also Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004). The ALJ must "give good reasons" for discrediting a treating physician's opinion. Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002).

The cardinal finding by the ALJ regarding plaintiff's RFC lies in his statement, "The undersigned finds no persuasive medical reason why the claimant could not perform at least medium work with the kinds of nonexertional limitations set out by Dr. Smith." (Tr.

19.)  The ALJ's description of plaintiff's RFC quoted above corresponds with the Commissioner's definition of medium work.[5]  The record, of course, contains evidence that supports an RFC that plaintiff is disabled, e.g., Dr. Wudel's written report, which the ALJ rejected.

The ALJ found that Dr. Wudel's opinions about plaintiff's RFC were inconsistent with his own records and the medical record generally, which are legally sufficient reasons to discredit his opinions.  Krogmeier, 294 F.3d at 1023.  The ALJ found that the doctor's opinions were inconsistent with his more credible contemporaneous treatment notes.  The ALJ observed that these treatment notes showed that during the latter months of his treating plaintiff, there were no acute complaints and she was in no acute distress.[6]

The ALJ found that the records indicated that she has hypertension, but without secondary damage to an organ.[7]  The ALJ found that plaintiff's March 2005 mammogram apparently did not indicate any serious condition.[8]  The ALJ found that plaintiff's obesity did not credibly limit her mobility or stamina.[9]  Dr. Wudel's records indicated that plaintiff's other illnesses and injuries were minor or had no significant long-term limitations.

---

[5]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, . . . he or she can also do sedentary and light work."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[6]See Tr. 151A (January 6, 2004), Tr. 158 (August 13, 2004), and Tr. 158A (February 28, 2005).

[7]See Tr. 143-44 (December 7, 2003), Tr. 151 (March 19, 2004), Tr. 151A (January 6, 2004), Tr. Tr. 157 (March 19, 2004), Tr. 158 (August 13, 2004), and Tr. 158A (February 28, 2005).

[8]See Tr. 161-62.

[9]See Tr. 151 (March 19, 2004), Tr. 158-158A (edema condition apparently cleared up between August 13, 2004, and February 28, 2005).

The ALJ found that no other treating or examining physician indicated that plaintiff was disabled or had any long-term limitation on her ability to do work activities. He found that she has had only two emergency room visits for asthma, in September 2002 and December 2003, that she does not take strong medication and has had no adverse side effects from the medications she takes. The ALJ also found that any restriction in plaintiff's daily activities are her own choice and not because of a doctor's suggestion. (Tr. 20-21.) These findings are supported by substantial evidence found at the referenced places in the record.

The question then becomes, What substantial evidence in the record supports the ALJ's RFC finding? Plaintiff argues that the ALJ rejected Dr. Smith's post-hearing examination findings.[10]

The ALJ did not expressly reject Dr. Smith's findings in their entirety. In fact, the ALJ relied upon them to a large extent, with the exception of plaintiff's asthma and related restrictions.[11] As set forth above, the ALJ found that plaintiff had non-disabling asthma. The record includes substantial evidence that plaintiff's asthma condition is not disabling. In September 2002, plaintiff was seen to have a history of bronchitis and was prescribed an inhaler. (Tr. 137.) In December 2003, in an emergency room visit plaintiff was noted to have a history of bronchitis and asthma, was then smoking, and was wheezing and short of breath since the

---

[10]"For what it is worth, the undersigned does not really need to rely on [Dr. Smith's report] to reach a conclusion of nondisability in this case. (The preponderance of the medical evidence indicates that the [plaintiff] does have asthma, contrary to Dr. Smith's reservations about the diagnosis.)" And the ALJ found that plaintiff had limitations more restrictive than those determined by Dr. Smith. (Tr. 20.)

[11]The ALJ observed that Dr. Smith found no indication of asthma. (Tr. 20.) Dr. Smith found that on the occasion of plaintiff's examination on August 9, 2005, plaintiff's breath sounds and chest were normal and he found no evidence of asthma. (Tr. 165-66.)

preceding Friday. (Tr. 143.) By the time she was released from the emergency room, her wheezing had ended; she was advised to stop smoking. (Tr. 144.) In January, March, and August 2004, and in February 2005, plaintiff's lungs were clear and there is mention only of a history of asthma. (Tr. 151, 151A, 157, 158A.)[12]

Other than plaintiff's weight lifting ability, the ALJ's RFC findings are supported by the record. The ALJ recounted the medical records generated by plaintiff's examination by Dr. Carl Baker in September 2001, before the alleged onset of disability. At that time, plaintiff complained of low back pain, was prescribed ice, medication, and exercise, and she was cleared to return to work. (Tr. 118.) In October 2001, her lungs were clear and she could return to work. (Tr. 119.) In July 2002, her lungs were clear, she had high blood pressure and back pain. (Tr. 123.) In August 2002, her lungs were clear, and she had flu-like symptoms; she was prescribed medication. (Tr. 124.) In September 2002 she had bronchitis and mild edema. (Tr. 125.) In early January 2003, she had flu-like symptoms; her other systems, including her musculoskeletal system, were normal. (Tr. 126.) In late January 2003, plaintiff complained of lower abdomen pain. (Tr. 127.) In April 2003, other than a stuffy head, lightheadedness, and wheezing, all of her systems were normal. (Tr. 128, 129.) Her condition was similar in July 2003. (Tr. 131.)

The ALJ specifically found that plaintiff had the ability to lift 25 pounds frequently and 50 pounds occasionally (Tr. 22), which he equated with the general ability to perform medium work (Tr. 19). Plaintiff's description of her past work as a certified nursing assistant involved lifting greater weights; however, the ALJ found that the limitations he found would not preclude plaintiff from performing the certified nursing assistant job as it

---

[12]These records also support Dr. Smith's failure to find evidence of asthma during his examination.

is found in the national economy, based upon the testimony of the VE. (Id.) The VE testified that the CNA job is described in the Dictionary of Occupational Titles as "medium and semiskilled," but is considered "heavy" work as performed in the national economy. (Tr. 216.)

The law is clear that, when the ALJ determines that a claimant can perform his or her past relevant work, the ALJ must make findings that describe the claimant's past relevant work and the claimant's RFC, and must show whether or not the RFC is sufficient to allow the claimant to perform the past relevant work. 20 C.F.R. §§ 404.1560(b), 416.960(b); Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004).

In this case, the ALJ's findings that plaintiff can lift 50 pounds occasionally and 25 pounds frequently, which are critical and necessary findings regarding whether plaintiff can perform her past relevant work as a CNA, are not supported by substantial evidence. Neither the plaintiff herself, nor any third party witness, nor any medical source, including Dr. Smith's RFC report,[13] indicated these specific facts. It is not sufficient to point to the records that indicate that plaintiff at different times was in no acute distress. Rather, it appears that the ALJ deduced these weight-lifting findings from the Commissioner's definition of medium work, which the ALJ determined plaintiff could perform.

Because the RFC 25/50 pound limitations finding is specifically unsupported by the substantial evidence, the case must be remanded for further proceedings regarding plaintiff's exertional RFC.

---

[13]Dr. Smith found that plaintiff's impairments were mild COPD, mild hypertension, seasonal alergies, obesity, and an old left lumbar injury. (Tr. 166.) He then reported generally that these impairments did not affect her ability to lift, carry, stand, and walk. No attempt to assess any specific exertional ability was made. (Tr. 169.)

Further, the ALJ's finding that plaintiff's prior relevant work as a CNA, as performed in the national economy, involved the lower exertional limits of 50 pounds and 25 pounds, is not supported by substantial evidence. The ALJ refers to the DOT, which is indeed an authorized source for this information. 20 C.F.R. § 404.1560(b)(2). However, the VE's testimonial opinion differed from the DOT's entry in a substantial way. The ALJ selected the DOT information without stating why. The case must be remanded to the Commissioner for a renewed determination of the exertional requirements of plaintiff's prior relevant work, either as plaintiff performed them or as they are performed in the national economy. If the ALJ determines that plaintiff cannot perform her past relevant work as a CNA, then the case will proceed to Step Five for a determination of whether there is any other employment in the national economy that plaintiff can perform.

Defendant argues that the ALJ is not required to produce affirmative evidence of any particular exertional ability, citing <u>Pearsall v. Massanari</u>, 274 F.3d 1211 (8th Cir. 2001). <u>Pearsall</u> holds that the plaintiff has the burden, not the Commissioner, to establish her residual functional capacity. 274 F.3d at 1217. That is undisputed. As set forth above, plaintiff offered her treating physician's opinion about her RFC, which the ALJ lawfully rejected. The ALJ went forward, however, and made exertional limitation findings which, in their specificity, were critical to the determination of disability. However, there is no evidentiary record that sustains this finding.

Because it is not for the court to make these findings and conclusions from the record, the final decision of the Commissioner

of Social Security is reversed and the action is remanded for further proceedings consistent with this memorandum opinion. An appropriate order is issued herewith.

      /S/ David D. Noce     
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on February 26, 2007.